IN THE UNITED STATES DISTRICT COURT FOR
SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| IRON CREEK VENTURES, INC. | ) | Civil Action No.: 6:09-00187-HFF |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **FORECLOSURE AND** |
| SOUTHERN SUITES GREENVILLE I, LLC, | ) | **CONSENT DECREE OF SALE OF PROPERTY** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court upon the motion of Plaintiff Iron Creek Ventures, Inc. ("Iron Creek") for the entry of an Order of Foreclosure setting a date of sale and the terms under which such sale should take place. Defendant Southern Suites Greenville I, LLC ("SS Greenville I") consents to this Motion.

Plaintiff filed the Complaint in this matter on January 1, 2009 seeking a judicial determination of the amount due under the Note and Mortgage held by Defendant and exhibits to the Complaint, a determination that such Note and Mortgage constituted first liens, a judgment for foreclosure and a judicial sale of the property. Plaintiff also sought the appointment of a receiver to manage the property in the interim. Defendant filed its Answer on February 24, 2009, which in part consented to the entry of judgment for foreclosure, a judicial sale and the appointment of a receiver. With the consent of Defendant, the Court entered an Order Appointing Receiver on February 24, 2009. The Consent Motion for Entry of Order of Foreclosure now before the Court was filed on May 12, 2009.

Having reviewed the submissions of the parties herein and with the consent of Plaintiff and Defendant, the Court makes the following Findings of Fact and Conclusions of Law.

## **FINDINGS OF FACT**

1.      Iron Creek Ventures is a corporation organized under the laws of the State of Texas with its principal place of business at 5750 Genesis Court, Suite 130, Frisco, Texas 75034.

2.      SS Greenville I is a limited liability company organized under the laws of the State of South Carolina with its principal place of business located at 12 Impact Drive, Greenville, South Carolina 29605.

3.      Pursuant to that certain Construction Loan Agreement dated June 30, 1998, entered into by and between Southern Suites Greenville, LLC and Wachovia Bank, N.A. ("Original Lender") (as assumed, amended, and modified from time to time, the "Loan Agreement"), Southern Suites Greenville, LLC received a loan from Original Lender in the original principal amount of Two Million Four Hundred Thousand and 00/100 Dollars ($2,400,000.00) (the "Loan"). *See ¶* 4 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

4.      The Loan is currently evidenced by, among other things, that certain Third Amended and Restated Promissory Note, dated October 8, 2002, made by SS Greenville I in favor of Original Lender in the original stated principal amount of Two Million Eight Hundred Sixteen Thousand and 00/100 Dollars ($2,816,000.00) (as assumed, amended, and modified from time to time, the "Note"). *See ¶* 5 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

5.      Original Lender assigned the Loan to Equity Bank, S.S.B. ("Equity Bank") by that certain Assignment of Note, Mortgage and Loan Documents dated December 20, 2007 and as further

evidenced by that certain Allonge dated December 20, 2007 and attached to the Note ("Allonge 1"). *See ¶* 6 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

6.     Equity Bank assigned the Loan to Plaintiff Iron Creek as evidenced by that certain Allonge attached to the Note dated September 19, 2008 ("Allonge 2"). *See ¶* 7 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

7.     The Loan is secured by, among other things, that certain Mortgage and Security Agreement dated June 30, 1998, executed by SS Greenville I in favor of Original Lender, and recorded on July 2, 1998, at Book 3100, Page 411, in the public land records of the Register of Deeds for Greenville County, South Carolina (the "Recording Office") (as assumed, amended, modified, and extended from time to time, the "Mortgage"). *See ¶* 8 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

8.     The Mortgage conveys a lien to and interest in, among other collateral and without limitation certain real property located in Greenville County, South Carolina including an extended-stay hotel (the "Facility") known as Southern Suites (collectively, the "Mortgaged Property"). As described in the Mortgage, Defendant granted Plaintiff a first-priority, perfected security interest in the Mortgaged Property and all other property now owned or hereinafter acquired as defined in the Mortgage, including without limitation, the land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances, including replacements and additions thereto, buildings structures and improvements, issues, profits, revenues, proceeds, leases and leasehold estates (collectively, the "Personal Property Collateral" and, together with the Mortgaged Property, collectively, the "Collateral"). *See ¶* 9 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

9. The Mortgage was assigned by Original Lender to Equity Bank by that certain Assignment of Note, Mortgage and Loan Documents dated December 20, 2007 and recorded in the Recording Office on February 26, 2008 at Book 4290, Page 2494, Instrument 2008017644 (the "Equity Bank Assignment"). *See ¶* 10 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

10. The Mortgage was assigned by Equity Bank to Plaintiff Iron Creek by that certain Assignment of Note, Leasehold Mortgage/Mortgage and Security Agreement dated September 19, 2008 and recorded in the Recording Office on September 24, 2008 at Book 4997, Page 155 (the "Iron Creek Assignment"). *See ¶* 11 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

11. Original Lender perfected its interest in the Personal Property Collateral by filing that certain UCC-1 Financing Statement with the South Carolina Secretary of State (the "Secretary of State") on July 7, 1998, at File # 980707-100154A (as assumed, amended, assigned, continued and modified from time to time, the "Financing Statement"), which was amended by that certain UCC-3 Financing Statement Amendment filed on March 10, 2000 with the Secretary of State at Instrument Number 000310-094139A, which was continued by that certain UCC-3 Financing Statement Amendment filed on May 8, 2003 with the Secretary of State, at Instrument Number 030508-1042326, and further continued by that certain UCC-3 Financing Statement Amendment filed on February 1, 2008 with the Secretary of State, at Instrument Number 080201-1158115. *See ¶* 12 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

12. The Financing Statement was assigned to Equity Bank by that certain UCC-3 Financing Statement Amendment filed on January 23, 2008 with the Secretary of State, at Instrument Number 080123-1256244. *See ¶* 13 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

13. The Financing Statement was assigned to Plaintiff Iron Creek by that certain UCC-3 Financing Statement Amendment filed with the Secretary of State on December 23, 2008, as Instrument 081223-1417504. *See ¶* 14 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

14. Original Lender further perfected its interest in the Personal Property Collateral by filing that certain UCC-1 Financing Statement filed on July 2, 1998, as a fixture filing at Book 1998, Page 1796, Instrument 1998054277, in the Recording Office (as assumed, amended, modified, and extended from time to time, the "Fixture Filing"). *See ¶* 15 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

15. The Fixture Filing was assigned to Equity Bank by that certain UCC-3 Financing Statement Amendment filed with the Recording Office on January 23, 2008, at Book 2008, Page 163, Instrument 2008007046. *See ¶* 16 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

16. The Fixture Filing was assigned to Plaintiff Iron Creek by that certain UCC-3 Financing Statement Amendment filed with the Recording Office on December 24, 2008, at Book FI 2008, Page 2765, Instrument 2008109458. *See ¶* 17 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

17. The Loan is further secured by, among other things, that certain Assignment of Rents and Leases dated June 30, 1998, executed by Southern Suites Greenville, LLC in favor of Original Lender, and recorded on July 2, 1998, at Book 1773, Page 33, in the Recording Office (as assumed, amended, modified, and extended from time to time, the "Assignment of Rents"). *See ¶* 18 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

18. Pursuant to the Assignment of Rents and the Mortgage, SS Greenville I absolutely assigned all of its right, title and interest in all rents, profits, royalties and other income and revenues

from the Mortgaged Property, including the Facility, (collectively, the "Rents") to Original Lender. *See ¶* 19 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

19. The Assignment of Rents was assigned to Equity Bank by the Equity Bank Assignment. *See ¶* 20 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

20. The Assignment of Rents was assigned to Plaintiff, Iron Creek Ventures, Inc., by the Iron Creek Assignment. *See ¶* 21 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

21. Pursuant to that certain Amended Articles of Organization – Limited Liability Company filed on October 1, 1998, with the Secretary of State, and recorded on March 23, 1999 in the Recording Office at Book 1826, Page 492, Southern Suites Greenville, LLC became then known as Southern Suites, LLC. *See ¶* 22 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

22. SS Greenville I is successor in interest to the Collateral and Southern Suites, LLC's obligations under the Loan as evidenced by: (i) that certain Assumption Agreement, dated January 31, 2000, by and between SS Greenville I , Southern Suites, LLC, and Original Lender (the "Assumption Agreement"); (ii) that certain Title to Real Estate by a Limited Liability Company executed by Southern Suites, LLC in favor of SS Greenville I, dated January 25, 2000, and recorded on January 26, 2000, at Book 1894, Page 693 in the Recording Office, as modified and amended by that certain Corrective Deed executed by Southern Suites, LLC in favor of SS Greenville I, dated February 24, 2000, and recorded on February 28, 2000, at Book 1900, Page 702, in the Recording Office, wherein Southern Suites, LLC conveyed the Mortgaged Property to SS Greenville I (the "Deed"); (iii) that certain Second Amendment to Mortgage and Security Agreement executed by and between Original Lender, Southern Suites, LLC, and SS Greenville I, dated January 31, 2000, and recorded on March 9, 2000, at Book 3334, Page 1852 in the Recording Office, wherein SS

Greenville I assumed Southern Suites, LLC's obligations under the Mortgage (the "Mortgage Amendment"); (iv) that certain First Amendment to Assignment of Rents and Leases executed by and between Original Lender, Southern Suites, LLC, and SS Greenville I, dated January 31, 2000, and recorded on March 9, 2000, at Book 1903, Page 295 in the Recording Office, wherein SS Greenville I assumed Southern Suites, LLC's obligations under the Assignment of Rents (the "Assignment of Rents Amendment"); and (v) that certain UCC-3 Amendment recorded on March 9, 2000, at Book 1998, Page 1796 in the Recording Office, reflecting SS Greenville I's assumption of Southern Suites, LLC's obligations under the Fixture Filing (the "Fixture Filing Amendment"). *See ¶* 23 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

23.     Due to the existence of certain events of default, SS Greenville I, Robert A. Sowinski, and Original Lender entered into that certain Forbearance Agreement dated May 1, 2007, which was amended by that certain First Amendment to Forbearance Agreement dated December 1, 2007 (as assumed, amended and modified from time to time, the "Original Forbearance Agreement"). *See ¶* 24 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

24.     The Original Forbearance Agreement provided, among other things, that all principal and accrued interest on the Loan was due and payable on March 1, 2008. *See ¶* 25 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

25.     All documents evidencing, securing or in any way related to the Loan, including, without limitation, the Loan Agreement, the Note, the Allonge 1, the Allonge 2, the Mortgage, the Assignment of Rents, the Equity Bank Assignment, the Iron Creek Assignment, the Fixture Filing, the Financing Statement, the Original Forbearance Agreement, the Second Forbearance Agreement,

and any amendments or modifications thereto are referred to collectively herein as the "Loan Documents."  *See ¶* 26 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

26.     Equity Bank and SS Greenville I entered into that certain Extension and Modification Agreement effective April 30, 2008, which would have extended the Maturity Date of the Loan until September 1, 2009.  However, the agreement required, as conditions precedent to the extension of the Maturity Date, for SS Greenville I to make certain payments and execute and deliver certain documents, which conditions precedent have not been satisfied.  Therefore, the Extension and Modification Agreement was and is null and void.  *See ¶* 27 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

27.     The Loan Documents were assigned by Equity to Plaintiff, Iron Creek Ventures, Inc., by the Iron Creek Assignment.  *See ¶* 28 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

28.     The Note requires, among other things, for SS Greenville I to make monthly payments of principal and interest.  The Note provides that SS Greenville I will be charged late fees if monthly payments of principal and interest are delinquent, that delinquent payments will accrue interest at a default interest rate, and that SS Greenville I shall pay Plaintiff's expenses with respect to the costs of collection or enforcement of the Note.  *See ¶* 29 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

29.     SS Greenville I has failed to make payments of principal and interest due under the Note, including without limitation, payments due to Plaintiff in December, 2008 and January, 2009.  As a result, various Events of Default have occurred under the Loan Documents.  *See ¶* 30 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

30. By letter dated December 9, 2008, Plaintiff, by and through counsel, notified Defendant of the default and maturity under the Note, Mortgage, and other Loan Documents (the "Default Notice"). Plaintiff also demanded payment of all obligations due under the Note (collectively, the "Loan Obligations"). *See ¶* 31 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

31. The Loan Documents provide, among other things, that in the instance of an Event of Default, Plaintiff has the right to foreclose the Mortgage and pursue any other available remedy, including without limitation, the appointment of a receiver, taking possession of the Facility, and collection of the Rents. *See ¶* 32 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

32. As of May 15, 2009, the Loan Obligations totaled $2,826,307.02, comprised of $2,699,720.23 in principal, $69,292.83 in interest, and $50,544.71 in costs and fees. The loans continue to accrue inter at a per diem rate of $449.95. *See ¶* 33 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

33. Pursuant to the Loan Documents, Defendant must reimburse Plaintiff for costs and expenses incurred by Plaintiff in connection with enforcing and collecting the Loan Obligations including without limitation, all attorneys' fees and other costs of collection and costs of insuring, protecting, maintaining and disposing of the Mortgaged Property. *See ¶* 34 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

34. Interest continues to accrue under the Note at the default interest rate of interest from and after January 21, 2009. Plaintiff continues to incur costs and expenses, including attorneys' fees and certain third party reports such as an appraisal. *See ¶* 35 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

35. Defendant SS Greenville I has failed to pay the outstanding balance of the Loan Obligations due and owing to Plaintiff. *See ¶* 36 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

36. By letter dated December 22, 2008, Plaintiff, by and through counsel, notified Defendants that Plaintiff was exercising its right to collect the Rents and revoked SS Greenville I's license to collect the Rents (the "Rents Notice"). *See ¶* 37 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

## CONCLUSIONS OF LAW

37. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is diversity between the parties and the amount in controversy exceeds $75,000.00.

38. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(A).

39. The Mortgage encumbers the Mortgaged Property located in the County of Greenville, State of South Carolina, and described more specifically herein.

40. The Mortgage constitutes a first priority lien on the Mortgaged Property.

41. The Mortgage expressly secures the total Loan Obligations due and owing on the Note.

42. The Defendant SS Greenville I's failures to make payments when due on the Note constitute Events of Default under the Mortgage.

43. The Mortgage is also a continuing first priority security interest on all personal property of Defendant SS Greenville I now owned or hereinafter acquired.

44. The Financing Statement and Fixture Filing perfected Plaintiff's security interest in the Personal Property Collateral described in the Loan Documents and create and perfect a first

priority lien security interest over the Collateral described in the Loan Documents.

      45.    Since various Events of Default have occurred, by virtue of Plaintiff's security interest in the collateral obtained in the Mortgage, Financing Statement and Fixture Filing, the Plaintiff is entitled to immediate possession of all collateral identified in the Mortgage, Financing Statement and Fixture Filing.

      46.    Plaintiff is entitled to foreclosure of the Mortgage on the Mortgaged Property and to proceed as to both the personal property and real property described in the Loan Documents free and clear of any adverse interests or liens.

**NOW, THEREFORE, upon the Motion of Plaintiff, and with the consent of Defendant, it is,**

      **ORDERED, ADJUDGED AND DECREED**

      1.    As of May 15, 2009, Defendant Southern Suites Greenville I, LLC, is indebted to Plaintiff in the amount of $2,826,307.02 which amount includes principal and interest, and costs including attorneys fees. Demand has been made upon the Defendant for payment of the amount due without success.

      2.    Plaintiff shall have judgment of foreclosure of its Mortgage against Defendant, and Defendant, and all persons claiming by, through, or under her, are hereby forever barred from all right, title, interest and equity of redemption in and to the mortgaged premises hereinabove described, or to any part thereof.

      3.    The United States Marshal or a duly authorized Deputy, after having advertised for sale the mortgaged premises, including all fixtures, personal or other property as referenced in the Loan Documents, once a week for four weeks prior to sale as required by 28 U.S.C. § 2002, shall

sell the mortgaged premises described in the Complaint subject to ad valorem taxes, at public auction before the door of the Greenville County Courthouse at the usual hour of public sale on any convenient date set by the Marshal and stated in the published notice of sale.

4. In conducting the sale, the United States Marshal or a duly authorized Deputy shall require the highest bidder, other than Plaintiff, to make a cash deposit of five percent (5%) of the bid as earnest money and as evidence of good faith. (The balance of the bid shall be paid in cash, by certified check or cashier's check.) If Plaintiff is the successful bidder at the sale, the amount due on its Mortgage may be used as the equivalent of cash. Should the person making the highest bid at the sale fail to comply with the terms of the bid by depositing the said five percent (5%) in cash, then the premises shall be resold at such bidder's risk on the same sales date, or some subsequent date, as the selling officer my find convenient and advantageous. Should the last and highest bidder fail to comply with the terms of the bid within ten (10) days of the final acceptance of the bid, the entire deposit shall be forfeited, and the selling officer shall readvertise and resell the property on the same terms and at the bidder's risk on a subsequent sales day.

5. Under 28 U.S.C. § 566, it is the duty of the United States Marshal to enforce the decree of the United States District Court and under § 564, the Marshal is authorized to exercise the same powers of the Sheriff in conducting the sale. It is in the interest of justice that the sale be conducted to yield the best price through free, fair, and competitive bidding. Any act that appears to prevent a free, fair, and open sale or to suppress the bidding or which otherwise adversely affects the sale, will not be allowed. If such an act occurs, then the sale will be halted. Further, the individual or individuals who perform any act which appears to contribute to the sale being halted

or otherwise adversely affected, may be charged with contempt of court, to be sanctioned accordingly, including but not limited to paying for the costs and expenses of the scheduled sale.

6. Upon full compliance with the terms of sale, the United States Marshal shall convey title in fee simple to the purchaser, or his nominee; the purchaser shall be let into possession of the premises upon production of the United States Marshal's deed; and all persons holding adversely to the purchaser shall be ejected from the premises by the United States Marshal. The United States Marshal is required to file a Report of Sale as soon as practicable after the sale.

7. The proceeds of the sale shall be applied first to the costs and disbursements of this action and the expenses of the sale; and second, to the payment and discharge of the amount herein found due the plaintiff; and should any of the proceeds thereafter remain, the balance thereof shall be held until further order of this Court.

8. After the sale of the premises, and as soon as the sale by the United States Marshal is complete, reported to by the United States Marshal, and has been approved by the Court, the mortgagor, or person in possession, shall within fifteen (15) days of the date of approval by the Court, move from the premises, and give up the premises, without damage or vandalism. Upon failure of any mortgagor, or other person, to vacate the premises within fifteen (15) days of the date of approval by the Court, the United States Marshal is authorized, empowered and directed to enter upon the premises, and evict them therefrom, unless prior to such date, the mortgagor, or other person in possession obtains from the Court an Order extending the time which said mortgagor, or other person shall have to vacate said premises. The United States Marshal (or deputy) is also authorized to remove from the premises any furniture or other possessions of the mortgagor, or other

person in possession, and any interference with the activities of the Marshal will be upon pain of contempt of Court.

**IT IS SO ORDERED.**

                                                s/Henry F. Floyd_____
                                                Henry F. Floyd
                                                United States District Judge

May 19, 2009
Spartanburg, South Carolina